# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:12CV-00008-JHM**

**KARL DOLL**                                                                                       **PLAINTIFF**

**VS.**

**CITY OF CENTRAL CITY**
**MUNICIPAL WATER AND SEWER**                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant City of Central City Municipal Water and Sewer's ("the City") Renewed Motion for Summary Judgment [DN 50]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

This action arises out of the termination of Plaintiff Karl Doll from the Waste Water Treatment Plant for the City of Central City. Prior to his termination, Plaintiff served as the chief supervisor of the Waste Treatment Plant and also worked at the Water Plant in order to obtain a water license. As the supervisor of the Waste Treatment Plant, Doll reported directly to City Administrator David Rhoades, who worked directly under the Mayor of the City, Barry Shaver. Mayor Shaver made the final decision to terminate Doll pursuant to the City's Handbook.

While the City alleges multiple factors motivated its final decision to terminate Plaintiff, the City initially became concerned about Plaintiff following his arrest in Christian County on July 21, 2010 for three counts of wanton endangerment. On the morning of the Plaintiff's arrest, he called in to work in order to ask for a vacation because he had decided to get married that day to Tonya Adams, who he had been dating for about six or seven months. However, while driving

with Adams somewhere to get married, the Plaintiff felt led to go to the Pennyrile State Park instead. Additionally, Adams' fourteen-year old son, Adams' seventeen-year old daughter ("JEI"), JEI's seventeen-month old daughter ("HL"), and Plaintiff's eleven-year old son were in the car with Doll and Adams on that day.

While at the park, Plaintiff, Adams, and all of the children except for JEI went out on a paddle boat on the lake. According to the Plaintiff, JEI had decided to stay inside of the car in order to sleep. At some point, JEI came down to the lake and demanded that Adams return HL to her. When everyone returned back to the dock with the paddle boat, Adams and JEI got into an argument about HL. Then, Adams, who still had HL, and Plaintiff retreated towards a bluff in the park. When a police officer finally arrived, he found the Plaintiff "laying [*sic*] in a patch of grass attempting to hide" and Adams "also laying [*sic*] in the thick grass with the 17 month old in her arm." Doll told the police officer that he "thought the world was coming to a [*sic*] end and seen GOD in the clouds." [Ex. 5, DN 50-6, at 3]. The Christian County police officer arrested Plaintiff for three counts of wanton endangerment.

Shortly following Doll's arrest, he met with Mayor Shaver, the City Administrator, the Chief of Police, and the then-Commissioner of the Water Board. During the meeting, Mayor Shaver informed Doll that he would be placed on paid administrative leave. However, due to financial constraints of paying Doll and also paying for a replacement, Mayor Shaver changed Plaintiff's status from paid to unpaid leave on September 11, 2010. Mayor Shaver then informed Plaintiff in writing on September 23, 2010 that he would be permanently dismissed for bringing "discredit upon the government" due to his arrest in Christian County for wanton endangerment. [Ex. 1 to Memo, DN 50-2, at 25]. In Mayor Shaver's deposition in this case, he considered "the testimony of the three counts of wanton endangerment, the safety issue, discrediting the city, the

2

mental evaluation" in coming to the conclusion that the Plaintiff discredited the City. [Barry Shaver Dep., DN 50-8, at 15]. On October 11, 2010, Mayor Shaver also obtained approval for the termination for Plaintiff from the Water Board Commission.

Plaintiff notified the City by letter dated September 30, 2010 that he intended to appeal his termination and requested a hearing be set for October 20, 2010 with the City Council. The Water Board Commission then informed Doll on October 1, 2010 that the City Council meeting had been rescheduled for October 18, 2010. Plaintiff's attorney at the time, Dennis Ritchie, mailed a letter to the City requesting Doll's hearing set for October 18, 2010 be rescheduled for November 10, 2010. Plaintiff never appeared at any future City Council meetings to contest his dismissal.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-

moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

### III. ANALYSIS

Plaintiff claims Defendant discriminated against him based on his religion and retaliated against him in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Kentucky Civil Rights Act ("KCRA"), KRS § 344.010. Plaintiff's Complaint also indicated that he would pursue a claim based on the City's Handbook; however, he did not respond to any of Defendant's arguments regarding this claim. In response to Plaintiff's claims, Defendant maintains that Plaintiff failed to administratively exhaust his federal claims and lacks sufficient factual support for his remaining state law claims.

**A. Title VII Religious Discrimination Claim and Retaliation Claim**

Defendant contends that Plaintiff failed to avail himself of the administrative process with the EEOC prior to filing a suit in court, and thus, his claim based on Title VII is barred. Plaintiff's response neither addresses Defendant's argument nor provides any evidence that he administratively exhausted his claim prior to filing suit. "A person seeking to bring a discrimination claim under Title VII in federal court must first exhaust h[is] administrative remedies." Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724, 731 (6th Cir. 2006) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976)). Because Plaintiff failed to exhaust his administrative remedies, his Title VII claim for religious discrimination must be dismissed.

4

Similarly, the Plaintiff was required to exhaust his administrative remedies prior to filing a suit for retaliation under Title VII. Sullivan v. Coca-Cola Bottling Co. of Ohio/Kentucky, 182 F. App'x 473, 479 (6th Cir. 2006) ("[The plaintiff] was required to file a charge of retaliation with the EEOC before filing a complaint alleging retaliation in federal court."). Additionally, as Defendant notes, Plaintiff may only pursue punitive damages under a Title VII claim as the KCRA does not provide for them. Hill v. Kentucky Lottery Corp., 327 S.W.3d 412, 430 (Ky. 2010); see also Kentucky Dept. of Corrections v. McCullough, 123 S.W.3d 130, 140 (Ky. 2003). Therefore, any claim for punitive damages must be dismissed along with Plaintiff's Title VII claims.

**B. KCRA Religious Discrimination Claim**

Unlike a discrimination claim under Title VII, a plaintiff is not required to exhaust his administrative remedies prior to filing suit. In fact, Kentucky requires a party to elect either a judicial or administrative forum to pursue a claim under the KCRA. McKissic v. Commonwealth Transp. Cabinet, 334 S.W.3d 885, 889 (Ky. Ct. App. 2010). Kentucky courts track federal law when applying the KCRA. See Kentucky Comm'n on Human Rights v. Commonwealth, Dept. of Justice, Bureau of State Police, 586 S.W.2d 270, 271 (Ky. App. 1979). Under Title VII, a party may bring two types of religious discrimination claims: a disparate treatment claim and a religious accommodation claim. Reed v. International Union, United Auto., Aerospace and Agr. Implement Workers of America, 569 F.3d 576, 579 (6th Cir. 2009). Defendant approaches Plaintiff's claim for discrimination under a religious accommodation theory and a disparate treatment theory while Plaintiff's responsive motion appears to only focus on a disparate treatment claim. In order to provide a thorough analysis, the Court will address both types of claims.

Defendant argues that Plaintiff cannot establish a prima facie case for religious discrimination under an accommodation theory. Plaintiff must establish the following elements:

> (1) [H]e holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflict; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement. Once an employee has established a prima facie case, [the defendant] has the burden to show that it could not reasonably accommodate the employee without undue hardship.

Reed v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, 569 F.3d 576, 580 (6th Cir. 2009) (quoting Virts v. Consol. Freightways Corp., 285 F.3d 508, 516 (6th Cir. 2002)). A party asserting a religious accommodation claim must have actually sought accommodation. See Laney v. Ohio Dept. of Youth Services, 448 F. App'x 553, 556 (6th Cir. 2011). Plaintiff has never asserted facts to support that he sought religious accommodation from the City. Therefore, Plaintiff cannot establish a claim based on a lack of accommodation.

In order to establish a prima facie case for religious discrimination claim based on disparate treatment, Plaintiff would need to prove the following:

> (1) [H]e was a member of a protected class; (2) that he was qualified to continue her job; (3) that he was subjected to an adverse action by h[is] employer; and (4) for the same or similar conduct, he was treated differently than similarly-situated non-protected employees.

Gibson v. Finish Line, Inc. of Delaware, 261 F. Supp. 2d 785, 791 (W.D. Ky. 2003) (citing Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000)). Then, "the defendant must articulate a legitimate nondiscriminatory reason for the plaintiff's termination. If the defendant can do so, the burden shifts back to the plaintiff to prove that the articulated reason was merely a pretext for the real reason, unlawful discrimination." Hall v. Baptist Memorial Health Care Corp., 215 F.3d 618, 626 (6th Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Plaintiff simply states that it is evident by the facts of this case that he meets all four elements of a prima facie case. However, the Court is not convinced that the facts "clearly" support a claim for disparate treatment. Specifically, Plaintiff fails to provide any evidence that a similarly situated non-protected employee was treated differently by the City. Plaintiff argues—without any factual basis—that the City hires Class D felons to work at both the water plant and the sewer treatment plant, but he fails to recognize that he served as a supervisor for the City.[1] Plaintiff may not rely on non-supervisory employees for the purpose of establishing the fourth element. Rutherford v. Britthaven, Inc., 452 F. App'x 667, 672 (6th Cir. 2011) ("We have previously held supervisory and non-supervisory employees to not be similarly situated.").

Even if Plaintiff could identify a similarly situated employee who was treated differently, he did not establish that Defendant's stated reason for terminating him was a pretext for discriminating against him based on his religious beliefs. In this case, the Defendant terminated Doll for bringing discredit to the City due to his arrest. In response to Defendant's stated reason for terminating him, Plaintiff relies on Hall v. Baptist Memorial Health Care Corp., 215 F.3d 618 (6th Cir. 2000) to argue that he was fired due to his religious beliefs. The Sixth Circuit, in upholding the district court's dismissal of Hall's religious discrimination claim, concluded that it was incumbent on the plaintiff to demonstrate it was the "religious aspect" of the plaintiff's actions that motived the employer's adverse employment action. Id. at 627. In Hall, the plaintiff's employer terminated her for taking a leadership position in a church known for supporting homosexual lifestyles, a view antithetical to her employer's mission. Id. As noted by the court in Hall, the fact that she took a leadership position with a church was irrelevant to the decision to terminate her because the employer would have terminated her if she had taken a

---

[1] Plaintiff also suggests that the City retained a sanitation worker who received a DUI; however, there is no indication that this person served as a supervisor, and in fact, he was demoted due to the DUI.

leadership position in a non-religious organization that advocated a similar view. Id. Similarly, in this case, the Court concludes that the City terminated Plaintiff due to his arrest and the subsequent concern about his mental health as opposed to any religious conviction that he might have held. Simply put, it was his actions that got him terminated, not his religious beliefs.

Based on the facts of this case, Plaintiff can neither establish a prima facie case for disparate treatment based on religious discrimination nor demonstrate that Defendant's reason for terminating him was pretext for discrimination.

### C. Retaliation Claim

Plaintiff asserts that Defendant retaliated against him in violation of the KCRA. To establish a prima facie case for retaliation, the Plaintiff must demonstrate the following:

(1) he was engaged in opposition to practices made unlawful by [the KCRA] or was a participant in a [KCRA] proceeding

(2) his activity was protected

(3) he was subjected to adverse treatment by the employer or labor union, and

(4) there was a causal connection between his opposition or participation and the retaliation.

Mountain Clay, Inc. v. Commonwealth, Comm'n on Human Rights, 830 S.W.2d 395, 396 (Ky. Ct. App. 1992) (applying the elements for a Title VII claim to one under the KCRA) (citations omitted). Plaintiff cannot establish the first element of a prima facie case because he never engaged in any protected activity. In Plaintiff's deposition for this case, he stated that he never made any complaints of discrimination to anyone. Without participating in some type of protected activity, Plaintiff may not assert a retaliation claim. Therefore, this claim is dismissed.

**D. Handbook Claim**

Plaintiff alleged in his Complaint that the City violated the policies provided in its Handbook in terminating him. Defendant responds with a two-fold argument for dismissal of this claim. First, Defendant posits that as a matter of law, the City's Handbook did not establish a contractual relationship between the Plaintiff and Defendant which would have altered the Plaintiff's at-will employee status. Second, even if the Handbook created a contractual relationship, the City terminated Plaintiff in compliance with its stated policies. Because the Court finds that the City's Handbook did not alter Plaintiff's at-will employee status, there is no reason to determine if the City followed its policies in terminating Doll.

Under Kentucky law, employees are terminable-at-will unless there is an express agreement between the parties with the intention of altering the "at-will" status. Nork v. Fetter Printing Co., 738 S.W.2d 824, 826-27 (Ky. Ct. App. 1987). In this case, the City's Handbook provided a section specifically disclaiming the existence of any contractual relationship. The relevant section is as follows:

> The following rules, regulations and other administrative provisions for personnel administration (herein after called 'Rules") are established for the information and guidance of all concerned. These rules DO NOT constitute an employment contract, or any other type of contract, either express or implied. All employment with the City of Central City is "Employment at will", unless an express separate written contract is entered into.

[Ex. 1, DN 50-2, at 5]. Plaintiff's deposition testimony reveals that he understood that this section to mean that he was an at-will employee with the City. [Doll Dep., 50-3, at 108]. Since neither party intended the City's Handbook to create a contractual relationship or alter the "at-will" status, the Defendant was free to terminate Plaintiff for any reason.

### E. Additional Claims Raised by Plaintiff in Responsive

Plaintiff appears to assert additional claims in his responsive motion that were not previously identified in his Complaint. Specifically, Plaintiff suggests that Defendant violated both § 1983 and the Religious Freedom Restoration Act of 1993 in terminating Plaintiff. Because Plaintiff failed to identify these claims in his Complaint, he may not now assert them in the summary judgment phase. "To permit a plaintiff to do otherwise would subject defendants to unfair surprise." <u>Tucker v. Union of Needletrades, Industrial and Textile Employees</u>, 407 F.3d 784, 788 (6th Cir. 2005) (citation omitted). Therefore, these additional claims are dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendant City of Central City Municipal Water and Sewer's ("the City") Renewed Motion for Summary Judgment [DN 50] is **GRANTED**.

*[Signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 24, 2014

cc: counsel of record